2011 OK CIV APP 111

**COUNTRYWIDE HOME LOANS, INC., Plaintiff/Appellant,**

v.

**BANCFIRST, a State Banking Corporation, Defendant/Appellee,**

**and**

**Bobby L. Hinkle; Julia Hinkle; John Doe; Jane Doe; Logan County Treasurer and The Board of County Commissioners of Logan County, Defendants.**

**No. 108,296.**

Court of Civil Appeals of Oklahoma, Division No. 1.

April 22, 2011.

Rehearing Denied June 24, 2011.

Certiorari Denied Oct. 10, 2011.

---

Blake C. Parrott, Baer, Timberlake, Coulson & Cates, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Michael Clover, Robert S. Duran, Jr., George Wright, Stuart, Clover, Duran & Thomas, Shawnee, Oklahoma, for Defendant/Appellee.

CAROL M. HANSEN, Judge.

¶1 Plaintiff/Appellant, Countrywide Home Loans, Inc. (Countrywide), seeks review of the trial court's judgment foreclosing mortgages on the property of Defendants, Bobby L. Hinkle and Julia Hinkle, and finding the mortgage of Defendant/Appellee, BancFirst, had priority over Countrywide's mortgage. We affirm, holding (1) BancFirst's mortgage retained its priority for future advances because it was obligated under its line of credit agreement to make future advances, and (2) Countrywide was ineligible for equitable relief because it was negligent in failing to obtain a release of BancFirst's mortgage.

¶2 On March 24, 2003, the Hinkles granted a mortgage on their home to First Commercial Bank to secure a loan for $247,200.00. In the same transaction, First Commercial Bank assigned the mortgage to Union Federal Bank. The mortgage was recorded on March 27, 2003. On June 1, 2004, the Hinkles granted a mortgage to BancFirst to secure a line of credit. The mortgage was recorded on June 2, 2004. The line of credit agreement provided for a draw period of the first five years, followed by a repayment period of ten years. It also provided the Hinkles could cancel the line of credit by so notifying BancFirst and returning all access devices. It stated, "Merely paying your Credit Line in full, without an accompanying written notice, will not be a cancellation."

¶3 On November 16, 2004, the Hinkles granted a mortgage to Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Security Savings Bank, FSB, to secure a loan for $356,000.00. The proceeds of the loan paid off the balances on the prior

mortgages. Union Federal Bank released its mortgage, but BancFirst did not, and the Hinkles continued to use their line of credit. MERS assigned the mortgage to Countrywide.

¶ 4 After the Hinkles defaulted under the note, Countrywide brought this action to foreclose its mortgage, alleging it was the current holder of the note. BancFirst cross-claimed to foreclose its mortgage, asserting its lien was prior to Countrywide's lien and claiming a balance due of $97,045.11 plus accruing interest. The matter came on for trial on December 10, 2009, with the only issue remaining for trial being the priority of the liens. After Countrywide put on its case in chief, BancFirst moved for a directed verdict. The trial court granted the motion, finding the BancFirst mortgage was the first mortgage and the Countrywide mortgage was the second mortgage. It granted judgment accordingly, and Countrywide appeals.

 ¶ 5 Countrywide's first contention is BancFirst's lien is junior to Countrywide's lien under the obligatory advance rule. Countrywide argues a senior mortgage securing future advances has priority over an intervening lien only if the mortgagee is obligated under the original agreement to make future advances, citing, among other cases, *Quail Creek Bank, N.A. v. Americrest Bank,* 2006 OK CIV APP 42, 135 P.3d 822. In that case, the Court cited a line of credit mortgage as an example of an agreement where the mortgagee is obligated to make future advances. 135 P.3d at 823.

¶ 6 Countrywide argues future advances under the line of credit agreement were discretionary because the Hinkles were in default under the BancFirst note and mortgage by transferring a security interest to Countrywide's predecessor in interest. The mortgage provided BancFirst had the right to accelerate the note upon sale or transfer of any right in the mortgaged property, and any action or inaction adversely affecting the collateral or the lender's rights in the collateral was an act of default. The evidence at trial showed BancFirst never accelerated the note. Countrywide asserts the trial court specifically found there was a default, but no such finding appears in the cited transcript. The Hinkles' transfer of a security interest to Countrywide did not adversely affect BancFirst's rights in the collateral, and therefore was not an act of default. The trial court did not err in treating BancFirst's mortgage as prior to Countrywide's mortgage under the obligatory advance rule.

 ¶ 7 Countrywide's second contention is the trial court should have applied the doctrine of equitable subrogation to find its mortgage was prior to BancFirst's mortgage. Equitable subrogation may "be invoked where it is clearly implied, from all the facts and circumstances surrounding the transaction, it was the intention of the parties that lender have a mortgage of equal dignity and position with the prior mortgagee upon discharge of that debt." *Mortgage Electronic Registration Systems, Inc. v. U.S. ex rel. I.R.S.,* 2006 OK CIV APP 45, 134 P.3d 913, 916. However, a lender's negligence and improper business maneuvers may act to remove an equitable remedy that would otherwise entitle it to a priority lien. *Id.* at 917.

¶ 8 In the present case, Countrywide loaned the Hinkles money to pay off the balance of their first and second mortgages. Countrywide obtained a release of the first mortgage, but it failed to obtain a release of the second mortgage securing the continuing line of credit. Countrywide's negligence in failing to obtain a release of BancFirst's mortgage removes its eligibility for the remedy of equitable subrogation.

¶ 9 For the foregoing reasons, the trial court's judgment is AFFIRMED.

HETHERINGTON, P.J., and BELL, C.J., concur.